Marc Toberoff (CA State Bar No. 188547)
  *mtoberoff@toberoffandassociates.com*
TOBEROFF & ASSOCIATES, P.C.
23823 Malibu Road, Suite 50-363
Malibu, CA 90265
Telephone: (310) 246-3333
Facsimile: (310) 246-3101

Attorneys for Plaintiff Clive Barker

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLIVE BARKER, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>PARK AVENUE ENTERTAINMENT, LCC, a California limited liability company; LAWRENCE L. KUPPIN, an individual, and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.: 2:20-cv-05296<br><br>**COMPLAINT FOR DECLARATORY JUDGEMENT** (28 U.S.C. § 2201).<br><br>**Demand for Jury Trial** |

Plaintiff Clive Barker for his complaint against Defendants Park Avenue Entertainment, LLC and its principal, Lawrence L. Kuppin, alleges as follows:

### NATURE OF THE ACTION

1. This action concerns the ownership of U.S. copyright interests in the 1986 novel entitled The Hellbound Heart (the "Book") and the derivative motion picture screenplay entitled "Hellraiser" (the "Screenplay"), both authored by Clive Barker, and on which the 1987 film "Hellraiser" and ensuing

"Hellraiser" film franchise are based. Defendants, an entertainment company and its principal, claim to own or control television and videogame rights to Barker's Book and Screenplay, as alleged successors to entities that acquired film, television and ancillary rights to Clive Barker's literary works. On December 18, 2019, Clive Barker duly served a statutory Termination Notice on Defendants' predecessors to reclaim his copyright interests pursuant to provisions of United States Copyright Act, 17 U.S.C. § 203(a). The Termination Notice, which was recorded in the United States Copyright Office, has an effective termination date of December 19, 2021. *Id*.

2. On June 4, 2020, Defendant Lawrence L. Kuppin sent pointed correspondence to Clive Barker's legal representatives claiming that the author purportedly holds no termination rights under 17 U.S.C. § 203(a) and that he cannot terminate Defendants' alleged U.S. copyright interests in his Book and Screenplay. Accordingly, in this action, Clive Barker seeks a declaration that his Termination Notice is valid under the Copyright Act, that it will re-vest in him copyright ownership of his Book and Screenplay on December 19, 2021, and that it does not give rise to any valid claim by Defendants against him.

## PARTIES

3. Plaintiff Clive Barker ("Barker") is a celebrated playwright, novelist, film director and visual artist, best known for his horror-fantasy works. Barker resides in the State of California, in the County of Los Angeles, and is a United States citizen.

4. Plaintiff is informed and believes and based thereon alleges that Defendant Park Avenue Entertainment, LLC is a limited liability company organized and existing under the laws of the State of California, which has an office in the State of California, in the County of Los Angeles, and which regularly conducts significant business in the State of California and the County of Los Angeles.

5. Plaintiff is informed and believes and based thereon alleges that Defendant Lawrence L. Kuppin ("Kuppin") is also a United States citizen and the principal and sole manager of the California limited liability company Defendant Park Avenue Entertainment, LLC; that Kuppin was formerly a long-time resident of the State of California in the County of Los Angeles, and that Kuppin currently has a residence in the State of Florida in the County of Miami-Dade.

6. Plaintiff is informed and believes and based thereon alleges that the fictitiously named Defendants captioned above as Does 1 through 10, inclusive, and each of them (hereinafter "DOE(S)") were in some manner responsible or legally liable for the actions, events, transactions and circumstances alleged herein. The true names and capacities of such fictitiously named defendants, whether individual, corporate, associate, or otherwise are presently unknown to Plaintiff, and Plaintiff will amend this Complaint to assert the true names and capacities of such fictitiously named Defendants when this has been ascertained. For convenience, each reference herein to a named Defendant or to Defendants shall also refer to the Doe Defendants and each of them.

7. Plaintiff is informed and believes and based thereon alleges that each of the Defendants was the agent, partner, servant, employee, or employer of each of the other Defendants herein, and that at all times herein mentioned, each of the Defendants was acting within the course and scope of such employment, partnership and/or agency and that each of the Defendants is jointly and severally responsible for the acts and omissions hereinafter alleged.

## JURISDICTION AND VENUE

8. This is a declaratory judgment action arising under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 (federal question) and 1338(a) (copyright) because all of Clive Barker's claims depend on resolution of

a substantial question of federal copyright law and because a distinctive policy of the Copyright Act requires that the federal principles control the disposition of the claims. This Court also has jurisdiction over Clive Barker's claim for a declaratory judgment that there is no valid claim against him for exercising his termination rights under the Copyright Act on the alternative basis of diversity jurisdiction under 28 U.S.C. § 1332. Plaintiff citizen of the State of California and Defendant is a citizen of the State of Florida, and the copyright interests at issue in this case are worth in excess of $75,000.

9. This Court has personal jurisdiction over the Defendants in that Defendants are regularly doing business in the State of California and in this District.

10. Venue is proper in the United States District Court for the Central District of California pursuant to 28 U.S.C. §§ 1391(b) and (c) and 1400(a) because a substantial part of the events giving rise to Plaintiff's claim occurred in this District and because Defendant Park Avenue Entertainment, LLC resides in this District.

## TERMINATION RIGHT UNDER THE COPYRIGHT ACT

11. The United States Copyright Act of 1976 (the "Copyright Act"), 17 U.S.C. §203 (a), provides authors with the non-waivable right to recapture their copyright interests, that were assigned or transferred after January 1, 1978 to third parties, by statutorily terminating those transfer(s) *without cause*, provided that the proscribed notice of termination is served on the prior grantee or successor grantee and filed with the United States Copyright Office, within delineated time windows.

12. Section 203(a) provides for the termination of post-1977 transfers of copyright interests by the work's author during a five-year period, commencing thirty-five (35) years after the date the subject copyright interests were originally transferred. 17 U.S.C. § 203(a)(3). Termination is carried out by

serving at least two-years in advance, a notice of termination, stating an effective termination date, within the five-year termination window. Upon that effective termination date, "all rights under this title [17 U.S.C. §§ 101 *et seq.*] that were covered by the terminated grants revert" to the author. *Id*. §203(b).

13. Congress enacted the termination right due to "the unequal bargaining position of authors, resulting in part from the impossibility of determining a work's value until it has been exploited." H.R. Rep. No. 94–1476 at 124 (1976); *see also Mills Music, Inc. v. Snyder*, 469 U.S. 153, 172-73 (1985). Congress therefore decided that once a grantee has had a generous period to enjoy a work's success, its author should be able to finally participate in "the true value of his work product." *Id.* at 173.

14. To protect this vital authorial right Congress made it "inalienable," *Stewart v. Abend*, 495 U.S. 207, 230 (1990): An author can exercise the termination right "notwithstanding *any* agreement to the contrary." 17 U.S.C. §203(a)(5) (emphasis added). As the Second Circuit has explained, "the clear Congressional purpose behind [this provision] was to prevent authors from waiving their termination right by contract." *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 290 (2d Cir. 2002).

15. The Copyright Act's termination provisions reflect a deliberate calibration of "the author/publisher balance." *New York Times v. Tasini*, 533 U.S. 483, 495 n.3 (2001). In furtherance of this balance, terminated grantees or their successors, like Defendants, can continue to exploit prior "derivative works" (*e.g.*, the ten *Hellraiser* films from 1987-2018) "under the terms of" their original grants. 17 U.S.C. §203(b)(1). In addition, terminated parties retain all foreign copyright interests originally granted. *Update Art, Inc. v. Modiin Pub., Ltd.,* 843 F.2d 67, 72 (2d Cir. 1988). Terminated parties are further afforded a competitive advantage to *reacquire* the author's recaptured copyright interests, 17 U.S.C. §203(b)(4), which is common due to the terminated parties retention

of foreign rights.

## BACKGROUND FACTS

*Clive Barker's Creation of the Works and the Chain-of-Title to Rights Therein*

16. Clive Barker authored the novella entitled <u>The Hellbound Heart</u> (the "Book"), which was first published by Dark Harvest Books in November 1986 in the third volume of the "Night Visions" anthology series. In 1986, Clive Barker also authored the motion picture screenplay entitled "Hellraiser" (the "Screenplay") derived from his Book (collectively, the Book and Screenplay are the "Works").

17. The Works are each wholly original and constitute copyrightable subject matter under the laws of the United States.

18. In an agreement dated September 9, 1986 (the "1986 Rivdel Agreement") Clive Barker assigned all rights under copyright, excluding publishing rights, in the Works to Rivdel Limited ("Rivdel"), an "SPV" (single-purpose vehicle) company formed in the U.K. and co-owned by Clive Barker and his producing partner, Chris Figg.

19. Later the same day, September 9, 1986, Rivdel entered into an agreement (the "1986 New World Agreement") with New World Pictures, Ltd. ("New World Pictures"), a Delaware corporation with its principal offices in Los Angeles, California, whose founder and principal was Defendant Lawrence L. Kuppin. The agreement granted New World Pictures certain rights in the Works, including film, television and merchandising rights. Rivdel, while re-granting rights to the Works, did not assign its underlying 1986 Rivdel Agreement to New World Pictures.

20. Rivdel was subsequently dissolved in or about 1991.

21. Kuppin's 1986 New World Agreement was governed by California contract law, and therein the parties "irrevocably agree[d] to submit to the jurisdiction of all federal or state courts within the County of Los Angeles".

22. New World Pictures financed and distributed the 1987 motion picture entitled "Hellraiser" (the "1987 Film"), which was based upon the Works and was directed by the Works' author Clive Barker.

23. Plaintiff is informed and believes and based thereon alleges that in or about 1987 New World Pictures changed its name to New World Entertainment, Ltd. (collectively, "New World").

24. Plaintiff is further informed and believes and based thereon alleges that in or about 1989, New World was sold by Defendant Kuppin and his affiliates to a third party.

25. Plaintiff is further informed and believes and based thereon alleges that on or about April 25, 1991, New World's rights to Barker's Works, the 1987 Film, two subsequent "Hellraiser" films, and other pictures in New World's film library were transferred to Defendant Kuppin.

26. Plaintiff is further informed and believes and based thereon alleges that on or about April 23, 1992, Kuppin assigned his rights to the Works and derivative "Hellraiser" films to Fifth Avenue Entertainment, Ltd., a California corporation owned or controlled by Kuppin.

27. Plaintiff is further informed and believes and based thereon alleges that on or about August 8, 1994, Fifth Avenue Entertainment, Ltd. assigned its rights to the Works and derivative "Hellraiser" films to Fifth Avenue Entertainment, L.P., a California limited partnership, owned or controlled by Kuppin.

28. Plaintiff is further informed and believes and based thereon alleges that on or about May 3, 1996, New World Entertainment, Ltd. further assigned rights to the Works and/or derivative "Hellraiser" films to Park Avenue Entertainment, L.P., a California limited partnership, owned or controlled by Kuppin.

29. Plaintiff is further informed and believes and based thereon alleges

that thereafter in or about December, 1997, Park Avenue Entertainment, L.P. was merged into Kuppin's California limited liability company, Defendant Park Avenue Entertainment, LLC.

30. At all times relevant to the above transactions, Defendant Kuppin was and remained a long-time resident of Los Angeles, California, until moving to Miami, Florida in or about 2014.

### Clive Barker's Notice of Termination

31. Pursuant to Section 203(a) of the Copyright Act, Clive Barker, as the author of the Works, had the full power and authority to recover all rights under U.S. copyright in his Works, by serving a notice of termination on Rivdel or its successor within the statutorily defined five-year window (September 9, 2021 to September 9, 2026) and filing that notice with the United States Copyright Office prior to the notice's effective termination date. 17 U.S.C. § 203(a).

32. On December 18, 2019, Clive Barker availed himself of this right by serving such a statutory notice of termination on Rivdel, and its original successor-in-interest, New World, of Barker's grant of rights under the U.S. copyrights to his Works (the "Termination Notice"). The Termination Notice bore an effective termination date of December 19, 2021, within the applicable statutory termination window, and was filed with the United States Copyright Office on February 28, 2020.

33. The Termination Notice complied with the procedures set forth in 17 U.S.C. §203(a) and 37 C.F.R. §201.10, the regulations promulgated thereunder by the Register of Copyrights.

### The Present Dispute

34. On June 4, 2020, Defendant Kuppin, who had received a copy of the Termination Notice, wrote to Clive Barker's counsel claiming that Barker purportedly has no termination rights under 17 U.S.C. § 203(a) with respect to

Defendants' copyright interests in the Works authored by Barker. Defendants argued that the U.S. Copyright Act somehow did not apply to Barker's U.S. copyright in his Works because the terms of Barker's 1986 agreement with his short-lived company, Rivdel, are to be construed under U.K. contract law.

## **FIRST CLAIM FOR RELIEF**

### (Declaratory Judgment)

35. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 33 inclusive, as though fully set forth herein.

36. By reason of the foregoing facts, an actual and justiciable controversy has arisen and now exists between the Defendants and Clive Barker in that Barker contends and Defendants deny that Barker's Termination Notice is valid and effective, and does not give rise to any valid claim by Defendants against Barker.

37. Clive Barker desires a judicial determination of these issues. Barker seeks a declaratory judgment that his Termination Notice is valid and effective and that on December 19, 2001 (the noticed termination date) he will recover and own all rights under the U.S. copyrights to his Works previously granted. Clive Barker further seeks a declaratory judgment that to the extent any agreement is deemed to prohibit his inalienable termination right it is unenforceable as an "agreement to the contrary" under 17 U.S. §203(a)(5), and that his Termination Notice does not give rise to any valid claim by the Defendants or their affiliates against him.

38. A declaration of the Court is necessary and appropriate pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 et seq., so that Clive Barker may ascertain and enjoy his rights in and to his Works under the Copyright Act.

///

///

///

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff Clive Barker prays for judgment against the Defendants as follows:

A. A declaration that Clive Barker's Termination Notice is valid and effective under the Copyright Act, and that on December 19, 2021 he will thereby own all rights under the U.S. copyrights to his Works;

B. A declaration that Clive Barker's exercise of his termination rights pursuant to 17 U.S. §203(a) does not give rise to any claim by the Defendants and/or their affiliates against him;

C. An order awarding Clive Barker's costs of suit, including his attorneys' fees; and

D. For such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby demands a trial by jury of all issues so triable in this action.

Dated: June 14, 2020          TOBEROFF & ASSOCIATES, P.C.


By: ___/s/ Marc Toberoff___
         Marc Toberoff

Attorneys for Plaintiff Clive Barker